EDMUND J. FLYNN COMPANY, Appellant,

v.

Evelyn R. SCHLOSSER, Appellee.

No. 5124.

District of Columbia Court of Appeals.

Argued April 6, 1970.

Decided May 22, 1970.

---

James C. Eastman, Washington, D. C., with whom Charles E. Pledger, Jr., Washington, D. C., was on the brief, for appellant.

Robert F. Comstock, Washington, D. C., for appellee.

Before HOOD, Chief Judge, NEBEKER, Associate Judge, and QUINN, Associate Judge, Retired.

QUINN, Associate Judge, Retired.

This appeal arises out of an agreement to purchase a cooperative apartment. Appellee was the prospective purchaser and appellant the agent of the seller. Appellee attempted to revoke her "offer" before the time for performance. At trial, by stipulation of both parties, the issues were reduced to one legal question: What effect was to be given a condition contained in the written sales agreement? As stated by the trial court, the question was: "Is it a condition precedent to the existence of a binding contract to purchase the apartment or a condition precedent to the obligation immediately to perform the contract?" The relevant portion of the agreement is as follows:

It is understood that Purchaser must be approved by the board of directors of the Cooperative, and the time hereinabove specified for full settlement shall be extended for the time necessary to receive the decision of said board of directors, provided said decision shall not have been received by said time appointed for settlement.

This entire agreement is conditioned upon Purchaser's being approved for occupancy by the board of directors of the Cooperative, as hereinbefore set forth, and the accompanying application for such approval, executed by both Seller and Purchaser, is hereby made a part hereof as fully as though written herein. It is agreed by the parties hereto that the Agent shall promptly submit said application to the said board of directors. In the event approval of the Purchaser shall be denied by the said board of directors, then, and in such event, the entire aforesaid deposit shall be returned to Purchaser promptly, and without any deduction therefrom whatsoever, and this agreement shall thereafter be of no further force or effect.

The sole question on this appeal is likewise the legal effect of this condition. The trial court found that the language in the writing was a condition precedent to the existence of a binding contract, and that the appellee was thus free to revoke her offer. We cannot agree.

The term "condition precedent" has led to much confusion in the law. Most of this confusion arises out of the so-called "dual usage" of the term; i. e., condition to the existence of a contract or condition to the duty to perform. In the case at bar, we are directly faced with the single issue of which use of the term is applicable.

█ When is a condition precedent a prerequisite to the existence of a contract?

There is authority for the proposition that this use of the term is a common, often applied, and well established legal principle.[1] An analysis of the case law, however, shows two specific areas where this use of the term has had a consistent application: (1) Where because of a "conditional acceptance" to an offer no mutual assent occurs and thus no contract arises,[2] and (2) where the effect of a contract is conditional on its validation by some "superior" or "higher" authority, reflecting a limited power in an agent to bind a principal.[3] The latter area consists almost entirely of cases in which a government or one of its agencies is one party to the contract.[4]

Much of the confusion in this area of the law can be attributed to the somewhat unfortunate use of the term "condition precedent" when addressing the issue of the formation of a contract. The issue really is not whether a "condition" must occur before a contract comes into existence but whether the parties have mutually assented or agreed to make a binding contract. If there is such mutual assent, agreed on conditions clearly affect only the duty to perform.[5] If no mutual agreement is ever reached, there is no contract: The "condition precedent" to the formation or existence of a contract is thus the mutual assent or agreement of the parties.[6]

■ The initial issue in this case is: Did the parties mutually agree to the purchase and sale of this cooperative apartment? By their own written agreement, which is the entire evidence before us as to this question, the only possible answer is in the affirmative.[7] Thus, both parties are bound by the agreement and neither has the power to unilaterally revoke.

As stated previously, the other area where the existence of a contract has been held to be conditioned involves approval by an authority higher than one of the contracting parties. Most of these cases involve that area of the law dealing with government contracts. District of Columbia v. Singleton, D.C.Mun.App., 81 A.2d 335 (1951), aff'd, 91 U.S.App.D.C. 91, 198 F.2d 945 (1952), is such a case in this jurisdiction. There it was held that "the statute here involved should * * * be construed to make a contract over the specified limit, which lacks the Commissioners' approval, unenforceable against the District but binding on the other party." 81 A.2d

1. E. g., National Dairymen Ass'n v. Dean Milk Co., 183 F.2d 349, 352 (7th Cir. 1950), cert. denied, 340 U.S. 876, 71 S.Ct. 122, 95 L.Ed. 637 (1950); 17A C.J.S. Contracts § 338 (1963).

2. E. g., Peerless Casualty Co. v. Housing Authority of Hazelhurst, 228 F.2d 376 (5th Cir. 1955); 1 Williston on Contracts § 77A (3d ed. 1957).

3. E. g., Monroe v. United States, 184 U.S. 524, 22 S.Ct. 444, 46 L.Ed. 670 (1902). Cf. Crenshaw County Hospital Bd. v. St. Paul Fire & Marine Insurance Co., 411 F.2d 213 (5th Cir. 1969); D. C. Andrews & Co. v. United States, 292 F.2d 280, 154 Ct.Cl. 460 (1961).

4. For a case in which a government was not a party, see Detroit Football Co. v. Robinson, 186 F.Supp. 933 (E.D.La. 1960), aff'd on other grounds, 283 F.2d 657 (5th Cir. 1960). The trial court and appellee rely heavily on this case. It is fully discussed, infra.

5. 1 Corbin on Contracts § 83 (1963).

6. Northeast Motor Co. v. Neal, D.C.Mun. App., 162 A.2d 287 (1960); 3 Corbin on Contracts § 589, n. 63 (Supp.1964).

7. We are not here faced with the problem of the admissibility of parol evidence to show that no contract was ever entered into. See Northeast Motor Co. v. Neal, supra note 6. Nor are we faced with the problem of the admissibility of parol evidence to show a failure of a condition precedent to the duty to perform under the contract, no such evidence having been introduced in this case. See Gordon v. Miami Nat'l Bank, 132 U.S.App.D.C. 124, 406 F.2d 660 (1968) (citing 3A Corbin on Contracts § 589 (1951)); Washington Tent & Awning Co. v. 818 Ranch, Inc., D.C.App., 248 A.2d 126 (1968); Luther Williams, Jr., Inc. v. Johnson, D.C.App., 229 A.2d 163 (1967) (and cases cited therein); Brier v. Orenberg, D.C. Mun.App., 90 A.2d 832 (1952); Creighton v. Brown, D.C.Mun.App., 77 A.2d 559 (1950); 3 Corbin on Contracts § 589 (1960).

**602**

at 337. We hold that the special rules embodied in government contracts law which cover approval by an authorized agent of the sovereign are not applicable in this case between private litigants.

The trial court, however, relied on the case of Detroit Football Co. v. Robinson, 186 F.Supp. 933 (E.D.La.1960), where a government contract was not involved.[8] There the court held that the endorsement of the commissioner of the National Football League was a condition precedent to the formation of a contract between the parties. The agreement had been reduced to writing and the condition read: "This agreement shall become valid and binding upon each party hereto only when, as and if it shall be approved by the Commissioner." 186 F.Supp. at 935. Appellant urges that, as the language in the contract before us is virtually the same, the above law should be applied to this case. We do not agree for the following reasons.

First, the circumstances and background of the *Robinson* case, the pre-merger "war" for talent between the National Football League and the American Football League, were quite foreign to the usual background in most contract cases. Second, and certainly not unrelated, the legal principles which eventually evolved from the pre-merger cases were not based on contract law but on principles of equity.[9] Both reasons are most persuasive for not following the "contract rule" set out in the *Robinson* case.

8. *See* note 4, *supra*.

9. The *Robinson* case was affirmed in Detroit Football Co. v. Robinson, 283 F.2d 657 (5th Cir. 1960), on the grounds that no abuse of discretion was shown in the trial court's denial of a preliminary injunction. In New York Football Giants, Inc. v. Los Angeles Chargers Football Club, Inc., 291 F.2d 471 (5th Cir. 1961), the same court held that an action for specific performance or injunction should be dismissed on the basis of the clean hands doctrine. *Contra*, Houston Oilers, Inc. v. Neely, 361 F.2d 36 (10th Cir. 1966), cert. denied, 385 U.S. 840, 87 S.Ct. 92, 17 L.Ed.2d 74 (1966) (the contract analysis in this case supports the holding

 Thus, we hold that the parties to the contract mutually agreed on the purchase and sale of this cooperative apartment. The condition, approval by the board of directors of the cooperative, was also a result of the mutual agreement. Neither party was obligated to perform until the happening of the condition, but neither party could rightfully revoke or withdraw in the meantime. Both parties were bound by the agreement.[10] As this was the only issue presented both on appeal and at trial, the case is

Reversed with instructions to enter judgment for appellant.

in the case at bar). *See also* Los Angeles Rams Football Club v. Cannon, 185 F. Supp. 717 (S.D.Cal.1960); 3 Corbin on Contracts § 589, n. 63 (Supp.1964).

10. Appellee's argument that the effect of this holding is to enforce a contract which binds the appellee-purchaser, but not the seller is without merit. The seller cannot withdraw or, for example, sell the apartment to another with impunity. Wetzel v. DeGroot, D.C.Mun.App., 86 A.2d 737 (1952), is not to the contrary. A valid second sale could be made, but it would be conditional on a failure of the condition precedent to the duty to perform in the first sale.