WhttakeR, Judge,
delivered the opinion of the court:
Plaintiff, in case No. 49844, was the surety on a bond guaranteeing performance of a contract between the Richland *492 Construction Company and defendant for the construction of certain drainage ditches in the state of Missouri. In case No. 49845 it was the surety on a bond guaranteeing performance of a contract between Bozeman and Gray and defendant for the construction of an item in the Fondale Levee, East Bank, Ouachita Liver, in the state of Louisiana.
Both contractors defaulted and the surety completed both contracts, but not until after the completion date in each contract. The defendant assessed against the surety not only the excess cost to the government incident to the contractors’ default, but also liquidated damages for the delay in completion. Plaintiff says the defendant cannot assess liquidated damages where it has terminated the right of the original contractor to proceed. This is the issue presented.
Article 9 of the contracts in these cases, relating to delays, differs from article 9 in the standard form of government contract, in that it renders liable the contractor and his sureties for the payment of both the excess cost of completion and also for the payment of liquidated damages for delay. Plaintiff says, however, that the Supreme Court, in United States v. American Surety Company, 322 U. S. 96, under the standard form of contract, held that where the government had terminated a contractor’s right to proceed, it could not also assess liquidated damages; and it further says that defendant was without power to deviate from this standard form of contract.
The latter position is not well taken.
Plaintiff relies on section 54.1 of the rules and regulations relative to public contracts (Title 41 U. S. C. App.). This reads:
Except as otherwise authorized, the following standard forms shall be used without deviation by all Executive agencies for or in connection with every formal contract of the kinds specified that may be entered into by them:
* * * $ $
(c) Construction contracts.
(1) U. S. Standard Form No. 23-Kev., approved by the Secretary of the Treasury, Revised April 3, 1942— for fixed-price contracts for the construction or repair of public buildings or works.
* * $ * *
*493 However, it is well settled that these regulations were for the benefit of the government and that a third party cannot complain of any deviation therefrom.
In United States v. New York and Porto Rico S. S. Company, 239 U. S. 88, 92, the Supreme Court said:
* * * while it is established that a contract not complying with the statute cannot be enforced against the government, it never has been decided that such a contract cannot be enforced against the other party.
In Perkins v. Lukens Steel Co., 310 U. S. 113, the Supreme Court said, at page 129:
* * * In this legislation [the Public Contracts Act] Congress did no more than instruct its agents who were selected and granted final authority to fix the terms and conditions under which the government will permit goods to be sold to it. The Secretary of Labor is under a duty to observe those instructions just as a purchasing agent of a private corporation must observe those of his principal. In both instances prospective bidders for contracts derive no enforceable rights against the agent for an erroneous interpretation of the principal’s authorization. For erroneous construction of his instructions, given for the sole benefit of the principal, the agent is responsible to his principal alone because his misconstruction violates no duty he owes to any but his principal. The Secretary’s responsibility is to superior executive and legislative authority. Kespond-ents have no standing in court to enforce that responsibility or to represent the public’s interest in the Secretary’s compliance with the Act. * * *
Indeed, in United States v. American Surety Company, supra, at page 101, on which plaintiff relies, the court said:
No statutory language or policy forbids the Government and a contractor from stipulating for liquidated damages in limited situations only. * * * Since we are not justified in rewriting the clear provisions of the contract to include what might well have been but was not inserted, the judgment below must be affirmed.
If a contracting officer had failed to comply with the regulations, the Government might escape liability on the ground that he was not authorized to enter into a contract not conforming to them; but, since the regulations were promulgated for the benefit of the Government, and not for the *494 benefit of any one else, the other party to the contract cannot complain that the regulations were not complied with.
Moreover, it must be presumed that when the surety executed its performance bonds it was aware of the terms of the contracts and was thus aware that the contracts provided not only for the assessment of excess costs for the default of the contractors, but also for the assessment of liquidated damages. We cannot conceive that the surety was not actually aware of this fact, but if it did not have actual knowledge of the terms of the contracts, it at least had constructive knowledge of them. The plaintiff having executed the bonds with knowledge of the contracts, and having received the premiums for the execution of the bonds, it is now estopped to assert that the contracts were executed without authority and were not binding on it.
Moreover, after default by the original contractors, supplemental contracts were entered into between defendant and the surety, which read:
It is understood and agreed that on account of the foregoing modifications of said contract, additional time will not be allowed and that no change will be made in the contract amount. * * *
All other terms and conditions of said contract as it heretofore may have been modified shall be and remain the same.
So, whether plaintiff had actual knowledge of the terms of the original contracts at the time it executed its performance bonds, it certainly had knowledge of them at the time it entered into these supplemental agreements, and they provided that article 9, authorizing the assessment of both excess costs and liquidated damages, should remain in full force and effect.
As a matter of fact, the War Department, which executed the contracts on behalf of the defendant, was of the opinion that it had the authority so to contract by virtue of the First War Powers Act of 1941 (55 Stat. 838; 50 U. S. C. App., Supp. 611, sec. 201). Pursuant to this Act, the President issued Executive Order 9001, 6 F. R. 6787, which provided that the War Department and the Navy Department and the United States Maritime Commission “be and they hereby *495 respectively are authorized within the limits of the amounts appropriated therefor to enter into contracts and into amendments or modifications of contracts heretofore or hereafter made, and to make advance, progress and other payments thereon, without regard to the provisions of law relating to the making, performance, amendment, or modification of contracts.” (Italics ours.)
The contracts in question, which were on “W. D. Contract Form No. 2,” were issued, in the opinion of the War Department, under authorization of this Executive Order.
It seems clear that plaintiff’s petitions must be dismissed. It is so ordered.
Laramore, Judge; Madden, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
findings of fact
The court, having considered the stipulations of facts entered into between the parties, and the briefs and argument of counsel, makes findings of fact in each case as follows:
1. Plaintiff, the Hartford Accident and Indemnity Company, is a corporation organized and existing under the laws of the State of Connecticut.

Case No. 49844

2. Eichland Construction Company, a corporation hereafter called “contractor,” entered into Contract No. 40-041-eng-722, dated August 21,1947, with defendant represented by the Department of the Army, Corps of Engineers, Memphis District, for the construction of drainage structures through the south levee of the Elk Chute Drainage District of Missouri, Dunklin County, Missouri, designated as Items Nos. S-34C-E.C. and S-35C-E.C,
3. The contract provided, in part, that the work was to commence within 20 calendar days after date of receipt of notice to proceed and was to be completed within 60 days after the date of notice to proceed. Liquidated damages were fixed at $30.00 per day for each day of delay on each of the two items.
*496 4. On the same date, August 21, 1941, plaintiff executed the performance and payment bonds required by law for the execution of this contract.
5. Notice to proceed on both items was given contractor on September 12, 1947, setting the original date of completion for November 11,1947. The contractor commenced work on the project which was then subject to the following pertinent modifications:
As to Item S-34C-E.C.
Mod. #2 dated 12/18/47 — Extended time for completion 39 days
Mod. #5 dated 9/27/48 — Extended time for completion 275 days
Mod. #6 dated 11/5/48 — Extended time for completion 25 days
Mod. #7 dated 3/7/49 — Extended time for completion 108 days
making the final completion due date January 31, 1949.
As to Item S-35C-E.C.
Mod. #2 dated 12/18/47 — Extended time for completion 39 days
Mod. #5 dated 9/27/48 — Extended time for completion 237 days
Mod. #6 dated 11/5/48 — Extended time for completion 15 days
Mod. #7 dated 3/7/49 — Extended time for completion 108 days
making the final completion due date December 14, 1948.
6. On May 13, 1948, when the contract work was still not completed, the contractor notified plaintiff, as surety, that it would not complete the contract. This letter of notice was forwarded on July 1, 1948 by plaintiff to the Government which, on July 13, 1948, declared the contractor to be in default.
7. On the same date plaintiff, as surety, was requested to take over and complete the job. The plaintiff exercised its option to take over the contract and complete work and a supplemental agreement was entered into between defendant, the contractor and plaintiff, dated July 20, 1948, said agreement providing in pertinent part:
*497 The Government has declared the contractor to be in default and terminated the contractor’s right to proceed with further work under said contract and has given the surety proper notice of said action.
The Surety has exercised its right to take over and complete work under said contract and has requested that a supplemental agreement be entered into to provide for payment to be made direct to and in the name of the Surety.
Now therefore, said contract is hereby modified in the following particulars, but in no others:
The Surety will take over and complete the work remaining to be performed under said contract in accordance with the provisions thereof.
The surety will receive payment of earned estimates for the work performed by it and, in the event the surety sustains a loss in the completion of the work, it will receive payment to the extent thereof from retained amounts due the contractor, if any, after all claims of the Government arising out of the contract against the contractor have been satisfied.
The execution of this supplemental agreement by the Government will not be construed as a waiver of its rights against the contractor.
It is understood and agreed that on account of the foregoing modifications of said contract additional time will not be allowed and that no change will be made in the contract amount.
ifc * # s{i
All other terms and conditions of said contract as it heretofore may have been modified shall be and remain the same.
8. The plaintiff satisfactorily completed the work on February 16, 1949, at a Gost of $40,684.16, sixteen (16) days after the final due date for Item S-34C-E.C., and sixty-four (64) days after the final due date for Item S-35C-E.C., through another contractor. In making final payment to plaintiff, the defendant deducted and retained $2,500.00, representing liquidated damages of $30.00 per day for eighty (80) days, assessed against the surety. Liquidated damages were assessed pursuant to Article 9 of the contract which provided:
If the contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified *498 in the contract, or any extension thereof, or fails to complete said work within such time, the Government may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event the Government may take over the work and prosecute the same to completion, by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby and for liquidated damages for delay as. fixed in the specifications or accompanying papers, or if not so fixed any actual damages occasioned by the delay. If the contractor’s right to proceed is so terminated, the Government may take possession of and utilize in completing the work, such materials, appliances, and plant as may be on the site of the work and necessary therefor. If the Government does not terminate the right of the contractor to proceed, the contractor shall continue the work, in which event the contractor shall be liable to the Government for any damages resulting from the delay as hereinabove stated, Provided, that the right of the contractor to proceed shall not be terminated or the contractor charged with liquidated or actual damages because of any delays in the completion of the work due to causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the Government, acts of another contractor in the performance of a contract with the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes. The contracting officer shall ascertain the facts and the extent of the delay and extend the time for completing the work when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal, within 30 days, by the contractor to the head of the department concerned or his duly authorized representative, whose decision on such appeal as to the facts of delay and the extension of time for completing the work shall be final and conclusive on the parties hereto.
Article 9, in the form used in this contract, varied in some particulars from the form set forth in 41 U. S. C. App. 12.23, and the form as used in the contract was not approved by the Secretary of the Treasury.
*499 9. The contract also contains the following disputes clause:
Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the Head of the Department concerned or his duly authorized representative whose decision shall be final and conclusive upon the parties hereto. In the meantime the contractor shall diligently proceed with the work as directed.
No appeals were filed by the contractor or the plaintiff in accordance with the above provision of the contract.
10. By voucher dated April 6, 1949, plaintiff obtained the “10th and final payment under contract * * At the time this voucher was executed and final payment received, plaintiff had knowledge of the fact that the deductions for liquidated damages were not part of the payment received. Said voucher was not signed under duress or under protest.

Case No. 1¡981¡5

11. Boseman and Gray, hereafter called “contractor,” a partnership consisting of Barney J. Bozeman and Harry Gray, entered into Contract Number W-16-047-eng-1537, dated October 10,1947, with the defendant represented by the Department of the Army, Corps of Engineers, New Orleans District, for the construction of Item 0-160-L, Fondale Levee, East Bank, Quichita Biver, Quachita Parish, Louisiana, as set forth and described in Paragraph 34, of the Specifications in consideration of the prices listed opposite each item below:

Item Description Quantity Unit Unit price Amount

1 Semi-compacted fill. 150,000 cu. yds.. 0.35 52,500.00
2 Drain outlet. 1 job. 5,000.00
3 Crown Surfacing. 7,000 cu. yds. 0.50 3,600.00
Total (approximately).... 61,000.00
12. The contract provided that work was to commence within twenty (20) calendar days after receipt by contractor of notice to proceed and was to be completed within ninety (90) calendar days after the date of receipt of notice to proceed. Liquidated damages were fixed in the specifications as follows:
*500 In case of failure on the part of the contractor to complete any item or items of work within the time fixed in the contract or any extensions thereof, the contractor shall pay the Government as liquidated damages the sum of Thirty dollars ($30.00) for each calendar day of delay on each item of work not completed or accepted within the prescribed time. The term “Item” as used in these specifications means a unit of work as listed, in Paragraph 34 hereof and the bid form, for which bids would be entertained and contract made independently of any of the work listed.
13. On the same date, October 10,1947, the Hartford Accident and Indemnity Company executed the performance and payment bonds required by law for the execution of this contract.
14. Notice to proceed was given contractor on October 22,1947, setting the date for completion at January 20,1948.
15. Contractor commenced work, but on April 19, 1948, prior to the completion of the work, contractor filed a voluntary petition in Bankruptcy. On the same date the Trustee in Bankruptcy disclaimed this contract. Although no formal or written notice of termination was delivered upon contractor or surety, the Government treated contractor’s right to proceed as terminated on the date of disclaimer by the Trustee, and on April 27, 1948, requested surety to take over and complete the performance of the contract. A supplemental agreement to the contract was executed by the parties concerned and approved by the Trustee in Bankruptcy and the Chief of Engineers; said agreement, dated April 19,1948, the date of the contractor’s petition in Bankruptcy, provided in pertinent part, as follows:
Whereas, the Hartford Accident and Indemnity Company (the surety) was notified 27 April 1948 to take over and complete the work and
Whereas, the Surety desires to receive payments as provided under the terms of the contract, in its own name and in the event the Surety sustains a loss in the completion of the work it will receive payment to the extent thereof from retained amounts due the Contractor ;
Now therefore, said contract is hereby modified in the following particulars, but in no others;
*501 The Surety will take oyer and complete the work remaining to be performed under the contract, in accordance with the provisions thereof.
The Surety will receive payment of earned estimates for the work performed by it and, in the event the Surety sustains a loss in the completion of the work, it will receive payment to the extent thereof from retained amounts due the contractor, if any, after all claims of the Government arising out of the contract have been satisfied.
*****
All other terms and conditions of said contract as it heretofore' may have been modified shall be and remain the same.
16. Plaintiff, as surety, completed the contract work through another contractor for a sum of Thirty-One Thousand, Three Hundred Twenty Dollars and Forty-Six Cents ($31,320.46). The contract was completed on August 27, 1948, two hundred twenty-one (221) days after the original completion date. On September 17, 1948, the Government by Modification No. 3, extended the time for completion one hundred eighty-seven (187) days, leaving the actual completion date thirty-four (34) days after the due completion date. In making final payment to the Surety, the Government deducted and retained One Thousand Twenty Dollars ($1,020.00) representing liquidated damages of Thirty Dollars ($30.00) per day for thirty-four (34) days assessed against Surety.
17. Liquidated damages were assessed pursuant to Article 9 of the contract which provided:
If the contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in the contract, or any extension thereof, or fails to complete said work within such time, the Government may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event the Government may take over the work and prosecute the same to completion, by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby and for *502 liquidated damages for delay as fixed in the specifications or accompanying papers, or if not so fixed any actual damages occasioned by the delay. If the contractor’s right to proceed is so terminated, the Government may take possession of and utilize in completing the work, such materials, appliances, and plant as may be on the site of the work and necessary therefor. If the Government does not terminate the right of the contractor to proceed, the contractor shall continue the work, in which event the contractor shall be liable to the Government for any damages resulting from the delay as herein above stated, Provided, that the right of the contractor to proceed shall not be terminated or the contractor charged with liquidated or actual damages because of any delays in the completion of the work due to causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the Government, acts of another contractor in the performance of a contract with the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes. The contracting officer shall ascertain, the facts and the extent of the delay and extend the time for completing the work when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal, within thirty (30) days, by the contractor to the head of the department concerned or his duly authorized representative, whose decision on such appeal as to the facts of delay and the extension of time for completing the work shall be final and conclusive on the parties hereto.
Article 9, in the form used in this contract, varied in some particulars from the form set forth in 41 U. S. C. App. 12.23, and the form as used in the contract was not approved by the Secretary of the Treasury.
18. The contract also contained the following disputes clause:
Article 15:
Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within *503 thirty (30) days to the Head of the Department concerned or his duly authorized representative whose decision shall be final and conclusive upon the parties hereto. In the meantime, the contractor shall diligently proceed with the work as directed.
No appeals were filed by the contractor or the plaintiff in accordance with the above provision of the contract.
19. By voucher dated November 22, 1948, plaintiff obtained the “Ninth (9th) and Final Payment on Contract” for “Levee construction on East Quichita Biver, constructing and partially completing Item 0-160-L, Fondale Levee, as per detailed sheet attached.” On the attached sheet, there appeared the following:
Deductions :
Liquidated damages, 25 July to 27 August 1948, inclusive : 34 days @ $30.00 $1,020.00.
The final payment voucher was executed by plaintiff’s representative as follows:
I certify that the stipulations required by law and/or under contract etc., with respect to wages, rights and hours of work of employees have been complied with.
I certify that the above bill is correct and just; that payment therefor has not been received; that all statutory requirements as to American production and labor standards, and all conditions of purchase applicable to the transactions have been complied with; and that State or local sales taxes are not included in the amounts billed; and that this payment is accepted as final payment and settlement in full and contract closed.
Payee The Hartford Accident & Indemnity Co.,
(Surety)
Per A. Daugherty,
Title General Attorney.
Said voucher was not signed under duress or under protest.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and its petitions are dismissed.